820 So.2d 37 (2002)
Christopher CLEVELAND a/k/a Pee Wee, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-02046-COA.
Court of Appeals of Mississippi.
April 2, 2002.
Rehearing Denied June 25, 2002.
Edmund J. Phillips, Jr., Brooks, Robert N. Brooks, Carthage, attorneys for appellant.
Office of the Attorney General by Charles W. Maris, Jr., attorney for appellee.
EN BANC.
LEE, J., for the court.
¶ 1. Christopher Cleveland who was also known as "Pee Wee" was convicted for the crime of aggravated assault on Cleveland McCall. Cleveland has filed a timely appeal and asserts the following issue: whether the trial judge erred regarding his denial of a continuance and the admission of testimony from other witnesses pertaining to the alleged suspect, Raymond Murrell. This Court finds this issue without merit. Accordingly, we affirm the verdict and sentence of the trial court.

*38 FACTS
¶ 2. At a little after 11:00 p.m., Cleveland McCall was in his bedroom inside his mother's house. McCall explained that his mother told him there was a knock on the door. McCall went to the door and looked out of the window and saw Cleveland standing on the other side of the door. Thereafter, McCall was struck in the head with a bullet. Interestingly, a convenience store clerk testified that Cleveland was in the convenience store near where the shooting of McCall occurred at around 11:00 p.m.
¶ 3. Cleveland testified that he did not shoot McCall. Additionally, Cleveland presented testimony from his uncle. Cleveland's uncle contended that McCall had admitted that he knew Cleveland was not the shooter, instead McCall had told him it was Raymond. Cleveland's uncle testified that this meant Raymond Murrell.
¶ 4. For the purpose of this appeal, we focus primarily on the dialogue that surrounds the continuance regarding the testimony of Raymond Murrell, and whether the testimony of the witnesses who would state that Murrell said he shot McCall should have been admitted.
¶ 5. Prior to trial, Cleveland had served a subpoena on Raymond Murrell to compel his testimony. On the day of the trial, counsel for Cleveland notified the trial judge that Murrell had been served with a subpoena; however, Murrell was not present and an attachment was requested and issued. Thereafter, Cleveland announced ready subject to the presence of his witnesses which included Murrell. The trial court considered Cleveland ready and the case proceeded to trial.
¶ 6. After the State had rested its case and before the defense had begun presenting theirs, counsel for Cleveland moved for a continuance. Counsel requested the continuance until such time Raymond Murrell could be found or it was determined that he could never be found.
¶ 7. Counsel for Cleveland requested the continuance because Cleveland had issued a subpoena for Murrell and Murrell did not appear nor was he found by the sheriffs office. Counsel for Cleveland asserted that Murrell would either admit or deny that he was the one who shot McCall. If Murrell denied that he shot McCall, then Cleveland would call witnesses to impeach Murrell's testimony who would state that Murrell had told them that he had shot McCall. At this time, the trial judge ruled that the motion was premature and that if it arose again he would address it at that time. This issue did arise again. The State objected to the admission of the evidence under Mississippi Rules of Evidence Rule 8.04.
¶ 8. Counsel for Cleveland informed the trial judge that although he had not intended to use it, there was a tape of a person who would be identified as Raymond Murrell. Counsel asserted that on the tape the person identified as Murrell admitted that he had shot McCall. Counsel stated that he might use this evidence for corroboration.
¶ 9. The trial court ruled as follows: "I asked Mr. Brooks had he talked to Raymond Murrell and knew himself what he would testify to, and, Mr. Brooks said he had not, and, nothing has been offered to indicate what this witness would testify to, so I am going to overrule your motion."

DISCUSSION

I. WHETHER THE TRIAL JUDGE ERRED REGARDING HIS DENIAL OF A CONTINUANCE AND THE ADMISSION OF TESTIMONY FROM OTHER WITNESSES PERTAINING TO THE ALLEGED SUSPECT, RAYMOND MURRELL.
*39 ¶ 10. On appeal, Cleveland argues that the trial judge's refusal to grant the continuance and to admit the statement from Raymond Murrell was in error.
¶ 11. "Under this Court's standard of review the granting of a continuance is largely within the sound discretion of the trial court, and a judgment will not be reversed because the continuance is refused unless there has been an abuse of sound discretion." Hardiman v. State, 776 So.2d 723, 727(¶ 19) (Miss.Ct.App.2001) (citations omitted). Hardiman also stated:
[T]he refusal of a motion for a continuance on the ground of the absence of a witness will not be overturned on a motion for a new trial unless the witness, or his affidavit showing what his testimony would be, is offered on the hearing of the motion, or it is shown that it was impossible or impracticable to secure the attendance of the witness or to secure his affidavit.
Id. (citations omitted); see also Wilson v. State, 716 So.2d 1096, 1099 (¶¶ 8-22) (Miss. 1998). In the case at bar, Cleveland's motion for new trial did not offer the testimony of Murrell or his affidavit stating what his testimony would be. Additionally, while counsel for Cleveland had asserted at the trial level that he had served Murrell with a subpoena, he did not argue or prove before the trial judge in his motion for a new trial that "it was impossible or impracticable to secure the attendance of the witness or to secure his affidavit." We cannot reverse this case. Other than the mere assertions made during the trial by counsel for Cleveland regarding Murrell's testimony, there is no substantive proof that what Murrell would have said would have aided Cleveland. Therefore, this issue is without merit.
¶ 12. On appeal, Cleveland has asserted three reasons why the testimony should have been admitted: (1) it was offered not only to prove the truth of the matter asserted, but also to demonstrate that another person had confessed, and therefore per [MRE] 801(c) it was not hearsay, (2) the testimony by Randy Cleveland ... together with the proffer of the recorded statement of Raymond Murrell was sufficient corroboration to make the statements admissible as an exception to the hearsay rule per MRE 804(b)(3), and (3) the statements were probative of material fact and served the ends of justice per MRE 803(24). We note that the record before this Court does not disclose that Cleveland made arguments to the trial judge for the admission of Murrell's testimony based on these grounds.
¶ 13. The closest we come to finding mention of these arguments is by the State with regards to its objection to the admission of the testimony under Mississippi Rules of Evidence 804. Therefore, the issue raised by Cleveland is procedurally barred. See Evans v. State, 725 So.2d 613, 639(¶ 48) (Miss.1997). Even though these issues are procedurally barred, our review does not end here.
¶ 14. Cleveland has argued that the trial judge erred in not granting a continuance because once Murrell's presence was secured he could have taken the stand to testify. If Murrell denied making the statement that he had shot McCall, then five witnesses could have been called to impeach his testimony. In the case at bar, we take the approach that the Mississippi Supreme Court took in Blue v. State, 674 So.2d 1184, 1234 (Miss.1996) (overruled in part on other grounds by King v. State, 784 So.2d 884, 889(¶ 21) (Miss.2001)).
¶ 15. In Blue v. State, Blue argued that the trial court erred when it ruled a potential witness's testimony inadmissible as hearsay. Id. at 1233. Just as in the *40 case at bar, Blue argued that even if the testimony were hearsay it would be admissible under Mississippi Rules of Evidence 804. Id. The Mississippi Supreme Court concluded that there was only speculation regarding what the potential witness would have done once he had taken the stand; therefore, the issue presented by Blue was moot. Id. at 1235. Like Blue, we have been presented with nothing more than speculation regarding Murrell's actions if he were to have taken the stand. There seems to be three scenarios regarding Murrell's testimony.
¶ 16. First, it is possible, although unlikely, that Murrell would have admitted that he shot McCall. Second, Murrell might have simply denied that he had any involvement in the shooting. Finally, Murrell might have elected to invoke his Fifth Amendment privilege. Just as in Blue, the record before this Court indicates that if Murrell had taken the stand and denied involvement in the shooting, then Cleveland wished to present witnesses to impeach him. However, it is equally as possible that Murrell would have invoked his Fifth Amendment right. If he had invoked this privilege it would not have been proper to present evidence for impeachment purposes. Blue, 674 So.2d at 1234. Since there is only speculation, we find no error by the trial judge, and this issue is without merit.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF NEWTON COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF SEVENTEEN YEARS TO RUN CONSECUTIVELY WITH THE SENTENCE IMPOSED IN CAUSE NO. 00-CR-008-NW, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO NEWTON COUNTY.
KING, P.J., BRIDGES, MYERS, CHANDLER and BRANTLEY, JJ., CONCUR. SOUTHWICK, P.J., CONCURS WITH A SEPARATE WRITTEN OPINION JOINED BY McMILLIN, C.J., BRIDGES, THOMAS AND CHANDLER, JJ. IRVING, J., DISSENTS WITHOUT A SEPARATE WRITTEN OPINION.
SOUTHWICK, P.J., concurring:
¶ 18. The evidence that Cleveland wanted to present is obviousRaymond Murrell had told several people that he was the person who had shot the victim in this case, not Cleveland. Having been blocked in introducing that evidence to jurors, Cleveland is here arguing error.
¶ 19. This is potentially quite important evidence. As a generic issue, had in fact the actual perpetrator of a crime been boasting to others about his misdeed, surely our procedures must within the restrictions for reliability and relevance permit admission of some evidence regarding the matter in the trial of a person falsely accused of that crime. Since truth and fabrication are for jurors to ascertain, my concern is only that our opinion not be read to leave a defendant without a mechanism for introducing such evidence if it meets certain threshold requirements. I find that this evidence did not satisfy those requirements and thus I concur in affirming Cleveland's conviction.
¶ 20. Cleveland subpoenaed Murrell, the alleged perpetrator of this assault. The majority opinion discusses the logical choices that Murrell would have had: 1) refuse to answer on the grounds of self-incrimination; 2) deny both the assault and the boasting; 3) admit both the assault and the boasting; 4) admit to the assault but not the boasting; or 5) deny the assault but admit to the (false) boasting. *41 Murrell exercised a sixth optionhe disappeared. Had Murrell admitted to the crime, then anything further from the other witnesses would have been irrelevant. Had he denied the crime and said that he nonetheless falsely bragged about having committed it, then the statements of people who had heard him brag would have been duplicative.
¶ 21. The defense would have had an interest in the other witnesses only if Murrell either invoked his right against self-incrimination or denied both the assault and the boast.
¶ 22. However, the Supreme Court has interpreted the evidentiary rules to prevent "impeachment" through introduction of a former inconsistent statement when the person being "impeached" has simply refused to testify. Conley v. State, 790 So.2d 773, 786 (Miss.2001). Further, if Murrell had denied having made the statements allegedly heard by the other potential witnesses, Cleveland could not introduce these other witnesses unless he could show that Murrell's denial was unexpected. Wilkins v. State, 603 So.2d 309, 322 (Miss. 1992). This restriction is not in the rules. Rule 607 allows a party seemingly without limit to impeach its own witness. The need for surprise is a court-added gloss whose primary purpose is to prevent the State from introducing otherwise inadmissible evidence in the form of its own witness's pre-trial inconsistent statements. Id. at 321. It applies to all parties, though, and not just to the State. Id. at 322.
¶ 23. The majority has discussed the issues regarding the denial of a continuance and I find no fault with the analysis. Even now, Cleveland has not shown sufficient information to justify reversal for the lack of a continuance. Thus, the questions that would arise from the right to impeach Murrell are moot. What is left is the admissibility of these witnesses' statements as substantive evidence.
¶ 24. The only means to have introduced the evidence of what the witnesses allegedly heard Murrell say is if these purported boasts met the test of admissibility under Rule 804. If so, then it would not just be impeachment evidence. The hearsay exception that applies to statements such as these is usable only when the declarant, Murrell in this case, is unavailable as a witness. M.R.E. 804(b). The statements allegedly made by Murrell would be against his own interest. Admissibility of such statements is not broadly permitted:
A statement tending to expose the declarant [Murrell] to criminal liability and offered to exculpate the accused [Cleveland] is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.
M.R.E. 804(b)(3). The substance of these statements obviously matches the rule. Whether the prerequisites for admissibility existed takes more detailed review.
¶ 25. The question under this rule is the kind of corroboration that is required. The State appears to suggest that independent evidence confirming that Murrell was the perpetrator of the crime is needed. I disagree except to the extent that it would be relevant to show that Murrell had some motive and opportunity for the criminal act. The principal corroboration is to reveal sufficient indicia of trustworthiness in the manner in which the statement was made to cause it to rise to the level of other hearsay exceptions. As one commentator explained about the identical federal rule:
Rule 804(b)(3) does not require that information within the statement be clearly corroborated; it requires only that there be corroborating circumstances *42 that clearly indicate the trustworthiness of the statement itself....
[C]ase law has identified at least three circumstances that are particularly relevant:
(1) The involved parties do not have a close relationship.
(2) The statement was made after the declarant was given the Miranda warning.
(3) There is no evidence that the declarant made the statement to curry favor with the authorities.
5 WEINSTEIN'S FEDERAL EVIDENCE § 804.06[5][a] & [b] (2001) (emphasis in original). There ought also to be some evidence that the declarant "was near the scene and had some motive or background connecting him with the crime" before his statement is admitted. Id. at § 804.06[5][c].
¶ 26. The facts necessary to consider these elements were not developed. We know that the statements were not made to authorities and thus no warnings about the right against self-incrimination would have been given Murrell prior to the statements. Murrell's possible friendship with Cleveland or animus towards the victim were not addressed. Other facts relevant for corroboration also were ignored. I agree that there was not enough offered here to permit the introduction of these statements as hearsay exceptions.
¶ 27. The State argues that Cleveland never offered the witnesses except to impeach Murrell. That is why the continuance was desired, to find Murrell and then to impeach him if he denied having made the statements. Yet, during the course of the arguments about the continuance, the trial judge ruled that he would allow the testimony about Murrell's boasts. The State objected, saying that the statements did not meet the test of Rule 804(b)(3) because there was no corroboration that indicated their trustworthiness. Cleveland makes this an appellate issue despite his failure clearly to offer this evidence in a form independent of impeachment at the trial level. I believe that this evidentiary rule is sufficiently presented for our review but its applicability on these facts properly rejected.
McMILLIN, C.J., BRIDGES, THOMAS, AND CHANDLER, JJ., JOIN THIS SEPARATE WRITTEN OPINION.